Civil Action No. 19-_____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 16-11501 (CSS)<br>(Jointly Administered) |
| MAXUS LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>YPF S.A., et al.,<br><br>Defendants. | Adversary Proceeding No. 18-50489 (CSS) |
| YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., and CLH HOLDINGS, INC.,<br><br>Appellants,<br><br>v.<br><br>MAXUS LIQUIDATING TRUST,<br><br>Appellee. | Appeal from the United States Bankruptcy Court for the District of Delaware |

## YPF APPELLANTS' MOTION FOR LEAVE
## TO FILE INTERLOCUTORY APPEAL OF BANKRUPTCY COURT'S
## ORDER DENYING YPF APPELLANTS' MOTION TO DISMISS COMPLAINT

---

[1] The Debtors in the above-captioned Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Maxus Energy Corporation (1531), Tierra Solutions, Inc. (0498), Maxus International Energy Company (7260), Maxus (U.S.) Exploration Company (2439), and Gateway Coal Company (7425). The address of each of the Debtors is 10333 Richmond Avenue, Suite 1050, Houston, Texas 77042.

**SIDLEY AUSTIN LLP**
James F. Conlan (admitted *pro hac vice*)
Jessica C. Knowles Boelter (admitted *pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Fax:  (312) 853-7036
jconlan@sidley.com
jboelter@sidley.com

SIDLEY AUSTIN LLP
John G. Hutchinson (admitted *pro hac vice*)
John J. Kuster (admitted *pro hac vice*)
Martin B. Jackson (admitted *pro hac vice*)
Andrew P. Propps (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
jhutchinson@sidley.com
jkuster@sidley.com
mjackson@sidley.com
apropps@sidley.com

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
James S. Green Jr.(No. 4406)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com
green@lrclaw.com

*Counsel for Appellants YPF S.A., YPF International S.A., YPF Holdings, Inc., and CLH Holdings, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

JURISDICTIONAL STATEMENT .......................................................................................3

FACTS NECESSARY FOR THE QUESTIONS PRESENTED ..........................................4

STATEMENT OF QUESTIONS PRESENTED.....................................................................6

RELIEF SOUGHT...................................................................................................................6

LEAVE TO APPEAL SHOULD BE GRANTED ................................................................6

    I.    Alter Ego Is Neither an Independent Cause of Action under Delaware Law
        Nor Can It Be .................................................................................................8

    II.    The Collapsing Doctrine Cannot Expand the Applicable Statute of
        Limitations for the Trust's Fraudulent Transfer, Unjust Enrichment and
        Civil Conspiracy Claims from 1996 to the 2016 Petition Date ............................12

    III.    Exceptional Circumstance Support Granting Leave to Appeal the Order.............16

CONCLUSION.......................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Astrazeneca AB v. Aurobindo Pharma Ltd.*,
   No. 14-664-GMS, 2014 WL 7533913 (D. Del. Dec. 17, 2014) ...................7

*Bertoli v. D'Avella (In re Bertoli)*,
   812 F.2d 136 (3d Cir. 1987)..................................................................6

*Blair v. Infineon Techs. AG*,
   720 F. Supp. 2d 462 (D. Del. 2010)......................................................9

*Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Invs., Inc.)*,
   No. M-47 (JFK), 1994 WL 49013 (S.D.N.Y. Feb. 17, 1994)...................7

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M.
   Fabrikant & Sons, Inc.)*,480 B.R. 480 (S.D.N.Y. 2012),
   *aff'd*, 541 F. App'x 55 (2d Cir. 2013).................................................13

*Caplin v. Marine Midland Grace Trust Co.*,
   406 U.S. 416 (1972)...........................................................................10

*Cipollone v. Liggett Grp., Inc.*,
   789 F.2d 181 (3d Cir. 1986)..................................................................7

*Crystallex Int'l Corp. v. Petróleos de Venez., S.A.*,
   No. 15-1082-LPS 2016 WL 7440471 (D. Del. Dec. 27, 2016) ..........8, 15, 16

*Fox Sports Net West 2, LLC v. L.A. Dodgers LLC (In re L.A. Dodgers LLC)*,
   465 B.R. 18 (D. Del. 2011)..................................................................7

*Glob. Link Logistics Inc. v. Olympus Growth Fund III L.P.*,
   No. 4444-VCP, 2010 WL 338214 (Del. Ch. Jan. 29, 2010)....................9

*In re Emoral*,
   740 F.3d 875 (3d Cir. 2014).................................................................10

*Kipperman v. Onex Corp.*,
   No. 1:05-CV-01242-JOF, 2010 WL 11505688 (N.D. Ga. Sept. 29, 2010).....9

*Marion v. TDI Inc.*,
   591 F.3d 137 (3d Cir. 2010).................................................................10

*Miller v. Kirkland & Ellis LLP (In re IH 1, Inc.)*,
   No. 12-50713, 2016 WL 6394296 (Bankr. D. Del. Sept. 28, 2016).........15

*N.J. Dep't of Envtl. Prot. v. Occidental Chem. Corp.*,
  No. ESX-L-9868-05, 2015 N.J. Super. LEXIS 230
  (N.J. Super. Ct. Law Div. Jan. 13, 2015).....................................................9

*Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley &
  Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355 (Bankr. S.D.N.Y. 2002)..................14

*Patrick v. Dell Fin. Servs.*,
  366 B.R. 378 (M.D. Pa. 2007) .....................................................................15

*Popular Leasing U.S.A., Inc. v. Forman*,
  No. 09-2788 (DRD), 2009 WL 2969519 (D.N.J. Sept. 14, 2009)...........................12

*SB Liquid. Tr. v. Preferred Bank (In re Syntax-Brillian Corp.)*,
  Adv. No. 10-51389, 2011 WL 3101809 (Bankr. D. Del. July 25, 2011),
  *aff'd in part, vacated in part on other grounds*,
  573 F. App'x 154 (3d Cir. 2014) ................................................................13

*Stanziale v. Sun Nat'l Bank (In re Dwek)*,
  Civ. No. 3:09-cv-5046, 2010 WL 234938 (D.N.J. Jan. 15, 2010)............................7

*Stillwater Liquid. LLC v. Net Five at Palm Pointe, LLC (In re Stillwater Asset
  Backed Offshore Fund Ltd.)*, 559 B.R. 563 (Bankr. S.D.N.Y. 2016)......................14

*Superior Contracting Grp. Inc. v. Rachmale (In re LTC Holdings, Inc.)*,
  587 B.R. 25 (Bankr. D. Del. 2018) (Sontchi, J.)................................................9

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
  No. 1571-N, 2006 WL 4782378 (Del. Ch. Aug. 10, 2006) ..................................11

*Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*,
  503 B.R. 239 (Bankr. S.D.N.Y. 2013)..................................................2-3, 14, 15

*U.S. Bank Nat'l Assn. v. Verizon Commc'ns, Inc.*,
  761 F.3d 409 (5th Cir. 2014),
  *cert. denied*, 135 S. Ct. 1430 (2015) .........................................................11

*W.R. Grace & Co. v. Libby Claimants (In re W.R. Grace & Co.)*,
  No. 08-246, 2008 WL 3522453 (D. Del. Aug. 12, 2008)................................. 15-16

*Yaquinto v. Ward (In re Ward)*,
  558 B.R. 771 (Bankr. N.D. Tex. 2016)..........................................................11

**STATUTES**

10 Del. C. § 8106 ...........................................................................................................15

28 U.S.C. § 158(a)(3) ................................................................................................1, 3, 6

28 U.S.C. § 1292(b) ..........................................................................................................6

**RULES**

Federal Rules of Bankruptcy Procedure Rule 8002 .........................................................4

Federal Rules of Bankruptcy Procedure Rule 8004 .....................................................1, 4

Pursuant to 28 U.S.C. § 158(a)(3), and in accordance with Rule 8004 of the Federal Rules of Bankruptcy Procedure, Appellants YPF S.A. ("YPF"), YPF International S.A. ("YPFI"), YPF Holdings, Inc. ("YPFH"), and CLH Holdings, Inc. (collectively, "YPF Appellants") hereby file their motion for leave to appeal the *Order Denying the Defendants' Motion to Dismiss Complaint* [Adv. D.I. 109] ("Order"), entered on February 15, 2019, by the United States Bankruptcy Court for the District of Delaware, and the corresponding February 15, 2019 Letter to Counsel [Adv. D.I. 107] ("Letter Opinion").

## PRELIMINARY STATEMENT

1.      YPF Appellants seek leave to appeal from the Bankruptcy Court's decision that allows multi-billion dollar claims (principally held by United States government creditors) to proceed against foreign government defendants on two separate legal grounds that the Trustee-Plaintiff itself conceded at oral argument have never been adopted by any judge in any court in the United States. The court's sweeping and incorrect decision—which fundamentally alters the manner in which every other bankruptcy in the United States has ever been conducted and allows statutes of limitation to be expanded by decades—is contrary to all applicable law, and was rendered in a mere "letter" of ten pages, notwithstanding 408 pages of briefing and an all-day oral argument.

2.      Leave to appeal should be granted because the court's decision permits a bankruptcy trustee to assert an alter-ego "claim" as an independent, stand-alone cause of action for creditors' proofs of claim when the law is clear that alter ego is a remedy, not a stand-alone cause of action, and must be attached to a viable cause of action belonging to the debtor, which the alter ego claim at issue here that seeks recovery for all creditors' claims (Complaint, Count I) is not. The New Jersey court considering this case prior to the Debtors' bankruptcy filing

conclusively held that alter ego is a mere remedy. Indeed, the very same Bankruptcy Judge that issued the Letter Opinion expressly held in another case that alter ego is a remedy, not an independent cause of action. But the Letter Opinion changes this well-established law. It also wrongly permits the Maxus Liquidating Trust (the "Trust") to pursue recovery on individual creditor claims, including up to $14 billion for environmental liability claims, that no one disputes Defendants played no role in creating. Every court that has considered this issue has made clear that trustees may not pursue individual creditor claims, especially where, as here, such claims have not been assigned to a debtor or a liquidating trust established to pursue claims belonging to the debtor or its estate. Indeed, the Trust's counsel conceded that no court has ever done so.[2]

3.      The Letter Opinion and Order also threaten to alter fraudulent conveyance law in bankruptcy proceedings by extending into perpetuity potential fraudulent transfer liability for a corporate parent whenever there are allegations of improper dominion and control over the subsidiary. Indeed, notwithstanding the Bankruptcy Court's determination that "the bulk, if not all, of the alleged fraudulent transfers occurred outside the operable statute of limitations" (Op. 9), the court did what no court has ever done—"expand the statute of limitations" for fraudulent transfer claims by more than a decade to reach transfers that occurred more than 20 years ago (*id.* 10). Similarly, the court applied the so-called "collapsing doctrine" to resurrect time-barred unjust enrichment and civil conspiracy claims, which no other court has ever done. By contrast, courts applying the collapsing doctrine, including *Tronox Inc. v. Kerr McGee Corp. (In re*

---

[2] Contrary to the Bankruptcy Court's understanding (Op. 3), YPF Appellants do not contest that the Trust may pursue an alter ego remedy if any of its fraudulent transfer claims were not otherwise time-barred (they are). However, the Trust's alter ego remedy can only be in the amount of the underlying fraudulent transfer claim; it cannot cover all creditors' claims that do not belong to the Trust.

*Tronox Inc.)*, 503 B.R. 239 (Bankr. S.D.N.Y. 2013), uniformly limit the doctrine to fraudulent transfer claims and use it only where steps of a transaction constitute a single, integrated transaction conceived at the outset that occurred within the applicable statute of limitations, not to expand or extinguish the applicable statute of limitations altogether.

4.      This matter presents exceptional circumstances to justify immediate appellate review of the Order because unless this Court grants leave to appeal, Defendants will be left litigating legally invalid claims that never should have been permitted to proceed in the first instance.  Moreover, unless the Order is reviewed now, it impermissibly exposes a foreign state, Argentina (as the majority owner of YPF),[3] to up to $14 billion in claims for environmental harm that Defendants did not cause and leaves them facing potential liability for corporate transactions that were fully disclosed in public SEC filings in the United States more than 20 years ago.

## JURISDICTIONAL STATEMENT

5.      YPF Appellants seek interlocutory review of the Letter Opinion and Order pursuant to 28 U.S.C. § 158(a)(3).  This Motion, and accompanying Notice of Appeal, are timely

---

[3] The very first page of the Letter Opinion highlights the importance of this Court's review, given that it erroneously asserts that "the American taxpayer" will be left "to remediate the pollution caused by Maxus" if the Defendants are not held liable.  Contrary to the court's critical misunderstanding, it is undisputed that the chemicals business of Diamond Shamrock (Maxus's predecessor), which was acquired by Occidental Chemical Corporation ("OCC") and merged into OCC, that caused the pollution giving rise to environmental liabilities.  While OCC obtained a contractual indemnity for environmental liabilities from Diamond Shamrock, Maxus (an oil and gas exploration company acquired by YPF in 1995) did not cause the pollution.  The Bankruptcy Court's further assertion that the American taxpayer will bear the burden of remediating the pollution is not supported anywhere in the allegations in the Complaint or in the parties' briefing.  On the contrary, the undisputed record is clear that OCC, as the successor to Diamond Shamrock's chemicals business, is liable for the pollution caused by the business it acquired in 1985, ten years before YPF acquired Maxus in 1995, and that OCC and other polluters will bear the burden of remediating the environmental harm, not the American taxpayer.  (Compl. ¶¶44, 59, 230-231.)  The counterfactual conclusion in the Letter Opinion underscores the critical need for this Court's review in order to correct the Letter Opinion's effect that erroneously casts this litigation as a battle between Argentina and the American taxpayer.

under Bankruptcy Rules 8004(a)(1) and 8002 as they are filed within fourteen days after the Order was entered.

6.      Though filed in the first instance with the Bankruptcy Court, this Motion is properly directed to the United States District Court for the District of Delaware.

## **FACTS NECESSARY FOR THE QUESTIONS PRESENTED**

7.      The Debtor Maxus is a successor to Diamond Alkali Company and Diamond Shamrock Corporation, which became Diamond Alkali's parent.  These companies and various of their successors operated a number of industrial sites throughout the United States.  In 1986, an affiliate of OCC purchased Diamond Shamrock's chemicals business through a stock purchase.  The affiliate soon thereafter merged into OCC.  While Diamond Shamrock, which was renamed Maxus in 1987, agreed to indemnify OCC for certain environmental liabilities related to the Diamond Shamrock chemicals business, OCC remains primarily liable for the environmental harm caused by the chemicals business as its successor.  (Compl. ¶¶41, 44-45 [Adv. D.I. 1].)

8.      In 1995, nearly a decade later, YPF acquired Maxus.  In 1996 and 1997, Maxus underwent a publicly-disclosed tax restructuring, in which foreign indirect subsidiaries of Maxus were sold to YPFI, a foreign subsidiary of YPF.  (*Id.* ¶¶59, 86, 90, 93; *Kuster Decl.* [Adv. D.I. 52], Exs. 6, 10.)

9.      In 1999, Repsol acquired majority ownership of YPF.  Repsol then allegedly caused Maxus to sell assets to third parties in 1999 and 2000, and caused the sale of certain former Maxus subsidiaries to Repsol affiliates and third parties in 2001 and 2002.  During Repsol's ownership of YPF, certain Debtors entered into settlement agreements amongst

themselves and with Repsol in 2007 and 2009, and with YPF in 2008. (Compl. ¶¶110, 114, 119-121, 139-140, 148.)

10.     In 2005, the New Jersey Department of Environmental Protection ("NJDEP") sued OCC, Maxus, YPF, Repsol, and certain of their respective affiliates in New Jersey state court for environmental cleanup costs at the Lister Site, one of Diamond Shamrock's former chemical facilities.   OCC later asserted various cross-claims against YPF and Repsol for fraudulent conveyance, unjust enrichment, civil conspiracy, and alter ego liability.   NJDEP settled with Defendants. (*Id.*¶¶13, 171.)

11.     In 2012, the Argentine government displaced Repsol as the majority owner of YPF. (*Id.* ¶¶188-191.)

12.     On June 17, 2016 ("Petition Date"), Debtors filed for bankruptcy, and in 2017, Debtors proposed and confirmed a plan ("Plan") anchored on prosecuting claims against Defendants. (*Id.* ¶¶206, 211.) The Plan established the Trust and provided for the transfer of the Debtors' and their estates' assets (with certain exceptions irrelevant here) to the Trust, together with "any and all Causes of Action held by Debtors and their estates against any of the YPF Entities." (Plan § I.A.217.)

13.     The Trust commenced this proceeding on June 14, 2018 by filing a 130-page Complaint.  Count I of the Complaint is a "claim" for alter ego liability, in which the Trust seeks to hold YPF Appellants jointly and severally liable (up to $14 billion) for all of the allowed proofs of claim filed by creditors against the Debtors.  Counts II through XXI seek to avoid alleged fraudulent transfers that occurred between 1996 and 1997 prior to Repsol's acquisition of YPF, and separate transfers that occurred between 1999 to 2009 during the period that Repsol

had a controlling interest in YPF. Finally, the Trust asserts claims for unjust enrichment (Count XXII) and civil conspiracy (Count XXIII).

14.     On October 12, 2018, Defendants moved to dismiss the Complaint. Oral argument was heard on January 22, 2019. On February 15, 2019, the Bankruptcy Court issued the Letter Opinion and entered the Order denying the motion.

## STATEMENT OF QUESTIONS PRESENTED

15.     The questions presented in this Appeal are as follows:

### QUESTION 1

Whether the Bankruptcy Court erred on two separate grounds by holding that (i) alter ego is an independent cause of action under Delaware law, and that (ii) such claim can be pursued by the Trust as a separate cause of action to recover for the Debtor's creditors' claims?

### QUESTION 2

Whether the Bankruptcy Court erred by "expand[ing] the statute of limitations" from 2006 all the way to the Petition Date for the Trust's (i) fraudulent transfer claims for transfers that were publicly disclosed in SEC filings and that "occurred outside the operable statute of limitations," and (ii) untimely unjust enrichment and civil conspiracy claims?

## RELIEF SOUGHT

16.     YPF Appellants request that this Court consider this exceptional appeal on an interlocutory basis and reverse and/or remand the Order.

## LEAVE TO APPEAL SHOULD BE GRANTED

17.     Pursuant to 28 U.S.C. § 158(a)(3), this Court has jurisdiction to hear interlocutory appeals of orders of the bankruptcy court in this District on the same grounds that the Third Circuit reviews interlocutory orders of the District Courts. *See Bertoli v. D'Avella (In re*

*Bertoli)*, 812 F.2d 136, 139 (3d Cir. 1987). "In determining whether to grant leave to appeal an interlocutory order of the Bankruptcy Court, District Courts apply the standards of 28 U.S.C. § 1292(b), which permits appeal of an order: (1) involving a controlling question of law, (2) upon which there is substantial ground for difference of opinion, and which (3) if appealed immediately may materially advance the ultimate termination of the litigation." *Fox Sports Net West 2, LLC v. L.A. Dodgers LLC (In re L.A. Dodgers LLC)*, 465 B.R. 18, 29 (D. Del. 2011).[4]

18.     All three factors are met here. *See, e.g., Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Invs., Inc.)*, No. M-47 (JFK), 1994 WL 49013, at *1 (S.D.N.Y. Feb. 17, 1994) (granting interlocutory appeal of denial of motion to dismiss avoidance action).

19.     First, the Bankruptcy Court's ruling involves several controlling questions of law because it involves several reversible errors of law and a "'controlling question of law' encompasses 'any order which, if erroneous, would be reversible error on final appeal.'" *Stanziale v. Sun Nat'l Bank (In re Dwek)*, Civ. No. 3:09-cv-5046, 2010 WL 234938, at *2 (D.N.J. Jan. 15, 2010) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc)).

20.     Second, there is substantial ground for difference of opinion concerning the controlling questions of law because the Order is contrary to well-established law or involves new, previously unaccepted theories of liability that require a court to resolve novel questions of law. *See PAH Litig. Tr. v. Water Street Healthcare Partners L.P. (In re Physiotherapy Holdings, Inc.)*, Misc. No. 16-201-LPS, 2017 WL 6524524, at *6 (D. Del. Dec. 21, 2017) (substantial ground for difference of opinion where "the bankruptcy court's decision is contrary to well-

_____

[4] If this Court determines that any portion of the Order is appropriate for interlocutory appeal, it may consider an appeal of the entire Order. *Cf. Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 187-88, 188 n.9 (3d Cir. 1986).

established law." (quotation omitted)); *Astrazeneca AB v. Aurobindo Pharma Ltd.*, No. 14-664-GMS, 2014 WL 7533913, at *1 n.1 (D. Del. Dec. 17, 2014) (substantial ground for difference of opinion where issue was "a controlling (and novel) question of law").

21.    Third, an immediate appeal of the Order will materially advance the ultimate termination of this litigation because a decision by this Court that the Bankruptcy Court erred would result in the dismissal of all or virtually all of the Trust's claims.

**I.    Alter Ego Is Neither an Independent Cause of Action under Delaware Law Nor Can It Be**

22.    YPF Appellants properly moved to dismiss the alter ego claim on the ground alter ego is not an independent cause of action under Delaware law and the Trust cannot assert an alter ego claim to recover for individual creditors' claims.  Without citing to a single case holding that alter ego is an independent cause of action under Delaware law, the Bankruptcy Court held that "alter ego can constitute an independent claim" (Op. 3), and erroneously permitted the  alter ego cause of action to survive dismissal even though it is solely based upon creditor claims that are not asserted in the Complaint and do not belong to Debtors or the Trust.

23.    This gives rise to a controlling question of law for which there is substantial ground for difference of opinion because if the Bankruptcy Court's Order is erroneous, its Order would be reversible error. *See Crystallex Int'l Corp. v. Petróleos de Venez., S.A.*, No. 15-1082-LPS 2016 WL 7440471, at *2 (D. Del. Dec. 27, 2016) (substantial ground for difference of opinion where claimant had asserted "creative and apparently unprecedented fraudulent transfer theory [that] required the Court to resolve novel questions of law").  As detailed below, no court applying Delaware law has previously held that an alter ego claim is an independent cause of action, and no court has permitted a trustee to recover for all creditor claims based upon an alter ego theory of recovery, especially if those claims have not been assigned to the debtor. When

asked about the Trust's theory of recovery for alter ego liability, counsel for the Trust conceded

that no court has ever imposed alter ego liability for all of a debtor's creditors' claims:

> Counsel: Look, alter ego is a remedy.  We get that.  I think all of the back and
> forth as to whether it's a remedy or cause of action is a red herring.
> What the debate is really about and [ ] the chart I showed you this
> morning was [ ] whether the trust has a claim against the shareholders
> to recover the harm suffered by the creditors in their embedded
> creditor claims. . . .
>
> COURT: All right.  I understand that theory.  Has any other court that you're
> aware of actually imposed [ ] liability like that?
>
> Counsel: Nope.

(Jan. 22 Tr. 153:1-7, 13-16) (emphasis added) [Adv. D.I. 100].

24.    Courts uniformly hold that alter ego is not an independent cause of action under

Delaware law. *See Glob. Link Logistics Inc. v. Olympus Growth Fund III L.P.*, No. 4444-VCP,

2010 WL 338214, at *7 (Del. Ch. Jan. 29, 2010) (dismissing veil piercing claim based upon

dismissal of the underlying claim); *N.J. Dep't of Envtl. Prot. v. Occidental Chem. Corp.*, No.

ESX-L-9868-05 (PASR), 2015 N.J. Super. LEXIS 230, at *26 (N.J. Super. Ct. Law Div. Jan. 13,

2015) (alter ego claim could only survive to the extent that the underlying legal claim survived

dismissal); *Kipperman v. Onex Corp.*, No. 1:05-CV-01242-JOF, 2010 WL 11505688, at *35

(N.D. Ga. Sept. 29, 2010) ("alter ego is not a standalone cause of action."); *cf. Blair v. Infineon

Techs. AG*, 720 F. Supp. 2d 462, 469 n.10, 470 n.11 (D. Del. 2010) (noting that "alter ego

analysis is in fact the same under [Delaware] state or federal law" and holding that under federal

common law "'piercing the corporate veil is not itself an independent cause of action, but rather

is a means of imposing liability on an underlying cause of action'" (alterations incorporated)

(quoting *Peacock v. Thomas*, 516 U.S. 349, 354 (1996))).  Even the very same Bankruptcy Court

previously held in no uncertain terms, that "[a]n 'attempt to pierce the corporate veil [i]s not

itself a cause of action but rather a means of imposing liability on an underlying cause of action,

such as a tort or a breach of contract." *Superior Contracting Grp. Inc. v. Rachmale (In re LTC Holdings, Inc.)*, 587 B.R. 25, 39 (Bankr. D. Del. 2018) (Sontchi, J.) (quoting 1 William Meade Fletcher, *Fletcher Cyclopedia of Corporations* § 41.28, at 166-67 (rev. ed. 2006)).

25.     Ignoring this wealth of authority, the Bankruptcy Court cited three inapposite cases, none of which addressed the specific issue of whether an alter ego claim is an independent cause of action under Delaware law.  Instead, those cases decided whether an alter ego claim to impose liability upon a corporate parent for an underlying legal claim is a general claim that is property of a debtor's estate.  (*See* Op. 3.)

26.     While YPF Appellants agree that the alter ego remedy is a generalized remedy that belongs to a debtor's estate, it must be supported by a cause of action that also belongs to the estate—and the Trust's alter ego remedy based solely upon creditors' claims is not.

27.     The Bankruptcy Court further attempted to justify its unprecedented holding by stating that "under the Third Circuit's decision in *In re Emoral*, 740 F.3d 875 (3d Cir. 2014) and this Court's ruling in *Maxus*, 571 B.R. at 660 . . . the alter ego claims of the Debtor's creditors are property of the estate and may only be pursued by the Trust."  (Op. 3.)  While the Third Circuit's decision in *Emoral* and the Bankruptcy Court's prior decision concerned whether successor or alter ego liability were general claims belonging to a debtor's estate, neither decision addressed the controlling question of law here: whether a trustee can pursue alter ego as an independent cause of action without an underlying legal claim belonging to the estate.

28.     The importance of this controlling issue is underscored by the fact the Trust seeks to use its standalone alter ego claim to circumvent federal law prohibiting a trustee from pursuing creditor claims.  *See Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434

(1972) (holding that a trustee has no standing to sue on behalf of individual creditors); *Marion v. TDI Inc.*, 591 F.3d 137, 148 n.15 (3d Cir. 2010) (same).

29.     While alter ego liability can be pursued by a trustee as a remedy for fraudulent transfer, unjust enrichment and civil conspiracy claims properly belonging to the debtor or its estate, under the Supreme Court's ruling in *Caplin* and the Third Circuit's ruling in *Marion*, the Trust cannot assert an alter ego claim (as it does here) to impose liability on Defendants for creditors' claims that do not belong to the Debtors or the Trust. *See, e.g., Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, No. 1571-N, 2006 WL 4782378, at \*19 (Del. Ch. Aug. 10, 2006) ("[L]itigation trusts do not have standing to pursue the direct claims of creditors.").

30.     Here, it is undisputed that the Plan provided for the Trust to be assigned only the Debtors' claims, not any creditors' claims.  However, in order to do an impermissible end run around the well-established prohibition against a trustee pursuing claims of individual creditors, the Trust asserts seeks recovery for the full amount of each creditor's claim against Debtors through its alter ego cause of action.  This runs directly afoul of *Caplin* and its progeny and cannot be cured simply by labeling its claim "alter ego".

31.     The Order on this controlling issue of law is contrary to settled law.  As the Trust's counsel conceded, no court has ever imposed alter ego liability for all of a debtor's creditors' claims based upon allegations that the "alter egos took away the assets that were otherwise necessary [to pay the debtor's creditors] whether by way of alter ego conduct or fraudulent conveyance or something else."  (Jan. 22 Tr. 153:9-12.)  In contrast, courts considering this issue have uniformly dismissed alter ego claims when the underlying fraudulent transfer or other claims asserted by the trustee against the alleged alter ego are legally deficient. *See, e.g., U.S. Bank Nat'l Assn. v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 442 (5th Cir. 2014),

*cert. denied*, 135 S. Ct. 1430 (2015); *Yaquinto v. Ward (In re Ward)*, 558 B.R. 771, 788-89 (Bankr. N.D. Tex. 2016). Indeed, this case illustrates why a blanket alter ego remedy over all creditor claims should never be permitted, because it permits a recovery that bears no relationship to the harm caused. The harm allegedly caused by Defendants as alter egos was purportedly removing assets out of the estates for less than fair value, and if fraudulent transfers occurred and the claims had been asserted in a timely fashion, the Debtors' estates would have an alter ego remedy tied to fraudulent transfer claims. But, it would be absurd to saddle Defendants with liability that has no relationship to any harm it caused, which is why individual creditor claims are not part of a debtor's estate.

32.     Granting leave to appeal this controlling issue of law will materially advance the ultimate termination of the litigation because dismissal of the alter ego claim will significantly reduce the scope of the litigation by nearly tenfold. The potential liability for the other claims in the Complaint is only a fraction of the up to $14 billion of creditors' claims asserted against YPF Appellants solely through the alter ego remedy. *See, e.g., Popular Leasing U.S.A., Inc. v. Forman*, No. 09-2788 (DRD), 2009 WL 2969519, at *5 (D.N.J. Sept. 14, 2009) (granting leave to appeal where a ruling "would dispose of a contentious issue on which the law is unsettled, thereby limiting the disputes below to issues relevant to the traditional claims asserted against Appellants such as fraud").

## II.     The Collapsing Doctrine Cannot Expand the Applicable Statute of Limitations for the Trust's Fraudulent Transfer, Unjust Enrichment and Civil Conspiracy Claims from 1996 to the 2016 Petition Date

33.     The Trust asserts 18 separate fraudulent transfer claims for transfers that occurred between 1996 and 2009. (Compl. Counts IV-XXI.) Given these undisputed facts, the Bankruptcy Court conceded that "defendants argue, quite correctly, that the bulk, if not all, of the alleged fraudulent conveyances that form the basis of the Complaint occurred outside of the

operable statute of limitations." (Op. 9.) However, rather than dismissing the claims, the Bankruptcy Court "expand[ed] the statute of limitations" from 1996 to the Petition Date to resurrect decades-old, time-barred fraudulent transfer claims—something no court has ever done before. (*Id.* 10.)

34.     While courts consider the entirety of a transaction to determine whether various steps of the transaction can be viewed as a single transfer concluded within the statute of limitations, courts are not empowered to rewrite a statute of repose and expand it. Neither *Tronox*, nor the collapsing doctrine applied by courts in the Third Circuit, permit a court to rewrite and "expand the statute of limitations" from 4 years to 20 years and move it forward all the way to the Petition Date.

35.     The controlling question of law, upon which there is substantial ground for difference of opinion, is whether the collapsing doctrine can be used to expand the applicable 4-year statute of limitations for separate and distinct transfers that occurred from 1996 to 2009 all the way to the 2016 Petition Date to make it a 20-year statute of limitations, when not a single factor considered by courts in the Third Circuit for applying the collapsing doctrine is applicable here: (i) whether all of the parties involved had knowledge at the outset of the multiple transactions to follow; (ii) whether each transaction would have occurred on its own; and (iii) whether each transaction was dependent or conditioned on other transactions. *See, e.g.*, *SB Liquid. Tr. v. Preferred Bank (In re Syntax-Brillian Corp.)*, Adv. No. 10-51389, 2011 WL 3101809, at *11-12 (Bankr. D. Del. July 25, 2011) (same), *aff'd in part, vacated in part on other grounds*, 573 F. App'x 154 (3d Cir. 2014).

36.     First, in 1996, by definition, YPF Appellants could not know, as they must for collapsing to ever apply, that Repsol would acquire YPF in 1999 and take steps to transfer assets

*away* from YPF entities to Repsol subsidiaries and third parties (Compl. ¶¶118-121). *See, e.g.,* *Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 480 B.R. 480, 488-90 (S.D.N.Y. 2012) (dismissal affirmed where bank defendants not alleged to have "actual or constructive knowledge of the entire scheme" at the outset), *aff'd*, 541 F. App'x 55 (2d Cir. 2013).

37.     Second, the 1996-1997 transfers that occurred while YPF owned Debtors were completed on their own independently of any subsequent transfers that occurred after Repsol acquired YPF in 1999.  Repsol allegedly caused Maxus and YPFI to sell assets to third parties and Repsol affiliates from 1999-2002, which was, by definition, not a prerequisite of the prior 1996-1997 transfers.[5]  *See Stillwater Liquid. LLC v. Net Five at Palm Pointe, LLC (In re Stillwater Asset Backed Offshore Fund Ltd.)*, 559 B.R. 563, 596 (Bankr. S.D.N.Y. 2016) (collapsing not warranted where complaint alleges that the idea for the second transaction did not arise until after the first transaction had occurred).

38.     Third, it is not and cannot possibly be asserted here that each transaction was dependent or conditioned on other transactions since the 1996-1997 transactions could not have been conditioned on the subsequent transfers directed by Repsol after 1999, which were previously unknown to YPF.  *See Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355, 370-73 (Bankr. S.D.N.Y. 2002) (rejecting collapsing doctrine on motion to dismiss).

39.     The Bankruptcy Court's reliance on *Tronox* to expand the statute of limitations from 4 years to 20 years for distinct corporate transactions that were directed by different corporate parents at different times is an unprecedented and improper expansion of the

---

[5] Compl. ¶¶113-124.

collapsing doctrine as a matter of law.  In *Tronox*, a single board of directors approved the spin-off of an affiliate in 2002, which involved several transactions to complete. 503 B.R. at 252.  The *Tronox* court concluded that the actual spin-off transaction took three years (until 2005) to accomplish, which was within the statute of limitations; it did not expand the statute of limitations.  *Id.* at 267-70.  The *Tronox* court specifically based its decision on its conclusion that the transactions initiated in 2002 "were part of a single integrated scheme, *known to Defendants*," at the outset that was not completed until 2005, well within the statute of limitations.  (*Id.* 267-71.)  Therefore, *Tronox* does not and cannot support expanding the statute of limitations 16 years to reach transfers that concluded in 1996.

40.     The Bankruptcy Court also denied the motion to dismiss the Trust's unjust enrichment and civil conspiracy claims as barred by the statute of limitations based on the court's holding that the statute of limitations for these claims could be "expand[ed]" under the collapsing doctrine.  (Op. 3, 9-10.)  However, the unjust enrichment and civil conspiracy claims are time-barred under the applicable 3-year statute of limitations (10 Del. C. § 8106), and no tolling doctrine applies to such claims against YPF Appellants because Delaware does not recognize a tolling doctrine based on adverse domination. *See, e.g., Miller v. Kirkland & Ellis LLP (In re IH 1, Inc.)*, No. 12-50713, 2016 WL 6394296, at *17 (Bankr. D. Del. Sept. 28, 2016).

41.     Granting leave to appeal the Order would materially advance the litigation because the Bankruptcy Court conceded "that the bulk, if not all, of the alleged fraudulent conveyances . . . occurred outside the operable statute of limitations" (Op. 9), and reversal would mean that those claims, as well as the unjust enrichment and civil conspiracy claims, would be dismissed, *see, e.g., Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 387 (M.D. Pa. 2007) (reversal "would resolve a large portion of the litigation without wasting the scarce resources of the

Bankruptcy Court and the parties," simplifying and expediting discovery); *Crystallex*, 2016 WL 7440471, at *2 (certifying order denying motion to dismiss on grounds that cause of action was not cognizable under controlling law).

III.   **Exceptional Circumstance Support Granting Leave to Appeal the Order**

42.   There are also "exceptional circumstances" justifying immediate appellate review of the Order. *See W.R. Grace & Co. v. Libby Claimants (In re W.R. Grace & Co.)*, No. 08-246, 2008 WL 3522453, at *2 (D. Del. Aug. 12, 2008) (quotation omitted).  Among other things, the Order disregards well-established law in a case that seeks recovery against foreign-owned entities for up to $14 billion of environmental harm that they indisputably did not cause. Moreover, the motion to dismiss was decided on such a consequential litigation without clear reasoning and notwithstanding the Trust's admission that there are no cases supporting its novel and unprecedented alter ego theory of liability. This concededly unprecedented ruling has enormous consequences for a foreign government, contravenes well-established precedent, and deserves immediate review by an Article III Court. *See, e.g., Crystallex,* 2016 WL 7440471, at *2 (issues of international comity and the transfer of $2.8 billion of internationally-owned assets constituted exceptional circumstances).

## CONCLUSION

WHEREFORE, YPF Appellants respectfully request that this Court exercise its discretion to consider the Appeal on an interlocutory basis.

Dated:  March 1, 2019
     Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
James S. Green Jr. (No. 4406)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com
green@lrclaw.com

– and –

Sidley Austin LLP
James F. Conlan (*pro hac vice*)
Jessica C. Knowles Boelter (*pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Fax:  (312) 853-7036
jconlan@disley.com
jboelter@sidley.com

Sidley Austin LLP
John G. Hutchinson (*pro hac vice*)
John J. Kuster (*pro hac vice*)
Martin B. Jackson (*pro hac vice*)
Andrew P. Propps (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
jhutchinson@sidley.com
jkuster@sidley.com
mjackson@sidley.com
apropps@sidley.com

*Counsel for the YPF Defendants*

## **Certification of Compliance**

Undersigned counsel certifies that this document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A).  Excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 5,114 words.

Dated:  March 1, 2019

_____
James S. Green (No. 4366)