# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 16-11501 (CSS)<br><br>Jointly Administered |
| MAXUS LIQUIDATING TRUST,<br><br>        Plaintiff-Appellee,<br><br>        v.<br><br>YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO.,<br><br>        Defendants-Appellants. | Adv. Proc. 18-50489 (CSS)<br><br>C.A. No. 19-mc-0051-RGA<br>(Consolidated) |

**REPSOL REPLY**
**IN SUPPORT OF MOTION FOR LEAVE TO APPEAL**

Repsol[1] submits this reply in support of its Motion for Leave to Appeal (D.I. No. 1) (the "**Motion**"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.    The Trust relies on a single phrase from oral argument, and the collective nature of bankruptcy, to contend that the Bankruptcy Court correctly found an independent "alter ego" cause of action exists as a matter of law. Neither creates a standalone alter ego cause of action.

---

[1] Undefined capitalized terms have the meaning ascribed to them in the Motion.

The Trust's entire argument, and the Opinion below, conflates the right of the estates (now the Trust) to pursue collectively underlying claims based alter ego *theories of liability* on behalf of all creditors with the false premise that the Trust can pursue a free-floating alter ego cause of action. There is bountiful support for the former, and none for the latter.

2.      By permitting the Trust to pursue a roving "alter ego claim" to recover all of Maxus's unpaid debts since Maxus (and its predecessors) was incorporated, the Opinion untethers the extraordinary remedy of alter ego from its underpinnings as an exception to corporate limited liability. Unless this error is rectified now, Repsol will have to: (1) endure costly, unnecessary discovery, (2) defend against a damages claim bearing no relationship to Repsol's alleged abuses of the corporate form, and (3) risk repaying debts Maxus incurred decades before Repsol acquired an indirect interest in Maxus that did not benefit Repsol.

3.      Contrary to the Trust's assertion, Repsol did not seek to prevent it from proceeding collectively on the estate's alter ego claims (i.e., allegations). If the Trust prevails on a substantive cause of action—establishing liability and damages—then it may proceed collectively against Repsol on an alter ego theory to hold Repsol liable for that underlying wrong.

4.      Knowing it cannot defend the Opinion's incorrect legal conclusion regarding the "collapsing doctrine," the Trust attempts re-characterizing a legal question as a factual one. Independent transfers and settlement agreements, taking place over a decade between parties that began as strangers, and a bankruptcy petition filing (*i.e.*, not a transfer) a decade *after* the final alleged fraudulent transfer, cannot be collapsed into a single transaction to toll the statute of limitations. *Tronox* collapsing requires: (1) *all* parties involved have knowledge of the multiple transactions at the plan's inception, (2) each transaction would not have occurred on its own, and

WEIL:\96980842\5\69508.0009

(3) each transaction was dependent and conditioned on the others. Repsol's Motion to Dismiss (A.D.I. 57, Adv. Proc. No. 18-50489) assumed as true for argument purposes the Trust's allegations that the "conspiracy" between YPF and Repsol (the "Strategy") began with YPF in 1995—four years before Repsol acquired YPF—and ended in 2016—four years after YPF was expropriated from Repsol—and argued that collapsing the transactions was impermissible as a matter of law. There is no fact issue. By the Trust's own pleading, Repsol could not have had knowledge of the multiple transactions beginning in 1995 *before Repsol was involved*. Moreover, each transaction would have occurred on its own, and was not conditioned on the others, because they began before Repsol arrived and occurred after YPF was expropriated from Repsol. The Trust cannot contrive a factual dispute to avoid interlocutory appeal.

## ARGUMENT

### A. The Creation of an Independent Alter Ego Claim Is Ungrounded and Presents a Controlling Question of Law

5. The Trust contends the Opinion's holding that "alter ego can constitute an independent claim," is not groundbreaking because the Bankruptcy Court required the claim be "coupled with allegations of another wrong, such as a breach of fiduciary duty or a fraudulent conveyance." Consolidated Opposition of the Trust (D.I. 7) ("**Opp'n**") at 11-12. Thus, the Trust claims, Repsol's identification of a disputed issue of controlling law is merely a question of "nomenclature." *Id*. That is wrong. Words matter.

6. No amount of "context," alters the Bankruptcy Court's explicit holding that "alter ego can constitute an independent claim" (Op. at 3), which is why Repsol quoted it completely. Opp'n at 12 & n.11. Neither the Bankruptcy Court nor the Trust cited cases supporting that holding.

WEIL:\96980842\5\69508.0009

7.      The Opinion's proviso that alter ego can constitute an independent claim "[w]hen coupled with allegations of another wrong, such as breach of fiduciary duty or a fraudulent conveyance," does not salvage the incorrect ruling; it highlights its incorrectness.  Alter ego is an equitable remedy that attaches to a substantive cause of action.  If the proviso simply reflected that fact—indeed, the Opinion curiously cited two substantive, underlying causes of action as examples of "another wrong"—then the Bankruptcy Court should have dismissed the standalone alter ego claim (Count I).  Instead, it held that alter ego constituted an independent cause of action, creating a controlling question of law that significantly changes the litigation's dynamics, as it puts Repsol at risk for *all* of Maxus' liabilities.

8.      Nor can the Trust's repeated emphasis on prior abstention rulings and remarks about allowing the Trust to proceed "collectively" support an independent alter ego cause of action.  Opp'n at 12.  First, the existence of a collective proceeding cannot create a cause of action that does not exist under substantive law.  Second, it is entirely consistent for the Court to: (1) find that the OCC's alter ego allegations against Repsol alleged facts that would generally apply to every Maxus creditor, such that the allegations (or claims) now belong to the Trust; (2) require that the Trust pursue a substantive cause of action to which the alter ego allegations attach, with any damages based on alter ego liability being distributed "collectively" to all creditors.  In this respect, alter ego claims are similar to claims under section 544, which also must attach to underlying causes of action (*i.e.*, state fraudulent transfer statutes).  Both are collective actions accomplishing the Code's goal of treating creditors equitably.  Collective proceedings do not change state law requirements of an underlying cause of action for alter ego.

9.      Additionally, although the "Opinion did not rely [] on cases that colloquially used the phrase 'alter ego claims,' and did not use the phrase colloquially itself," Opp'n at 12, that is

because the Opinion did not cite *any* cases for its novel proposition that alter ego constitutes an independent claim. It instead relied on cases deciding, in the *Emoral* context, whether alter ego allegations belonged to an individual creditor or the estate. Op. at 3. But finding that such claims were generalized and belong to the estate does not displace the requirement that alter ego be attached to an underlying cause of action.

10. The Trust again brings up the Opinion's proviso about alter ego being an independent cause of action when coupled with "allegations of another wrong." Opp'n at 12. That is exactly the point: alter ego "claims" are not free-floating; they *require* an underlying cause of action. Repsol's Motion to Dismiss Count I did not seek dismissal of the alter ego allegations; it sought to dismiss a non-existent alter ego *cause of action* for which the Trust improperly sought to pursue direct creditor claims it has no standing to pursue.[2]

11. But that is not the understanding of the Opinion. And it is not the position of the Trust, which seeks an independent cause of action for alter ego to "'collectively recover damages on behalf of all creditors, including amounts equal to the unpaid creditors' claims," even if those amounts do not relate to the underlying "wrongs" (the Trust's substantive causes of action). Opp'n at 12. The Trust cannot simultaneously argue that the Opinion broke no new ground because it tied its finding of a standalone alter ego claim to allegations of another "wrong," and then argue that the wrongs it identified (fraudulent transfers, unjust enrichment, and civil conspiracy) are irrelevant to the alter ego claims.

---

[2] Repsol agrees with YPF that the Opinion erroneously permits the Trust to pursue creditor claims under a standalone alter ego claim. *See* ECF No. 1, Case No. 19-mc-00051 at ¶¶ 28-30. Given the several erroneous rulings, Repsol did not focus attention on this error, however, a reversal on this basis would also require dismissal of Count I against Repsol.

WEIL:\96980842\5\69508.0009

### B. *Tronox* Collapsing Is Inapplicable as a Matter of Law

12. The Trust defends the Opinion's application of the *Tronox* collapsing doctrine, holding the Trust could collapse all of the complained-of transactions, spanning 20 years and involving parties that began and ended as strangers. It insists that this ruling depends on factual issues and cannot be resolved now. Opp'n at 15. That is incorrect.

13. While the determination of when to start the limitations clock can be "fact-intensive," (Opp'n at 15-16), Repsol's argument and the Opinion's holding were purely legal because both accepted the Trust's pled facts as true. The Trust alleged that YPF concocted the "Strategy" in 1995, before Repsol acquired an indirect interest in Maxus in 1999, and that Repsol's relationship with YPF was involuntarily severed by the 2012 expropriation. These allegations, taken as true, cannot satisfy the three-part collapsing elements of *Tronox* as a matter of law. *See* Mot. ¶¶ 27-28. The question is purely legal; its answer does not require resolution of any factual disputes. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 2018 WL 6329139, at *9 (S.D.N.Y. Nov. 30, 2018) (finding, based on pled facts, three-factor collapsing test was not satisfied under Rule 12(b)(6)).

14. Extending the *Tronox* doctrine beyond its bounds, the Bankruptcy Court ignored Repsol's arguments that the Trust's other claims were time-barred because the transactions began in 1995 and ended in 2009. Without the improper application of *Tronox*, the Bankruptcy Court would need to decide whether those individual transactions could support a claim for relief, under applicable limitations periods.

15. Even if determining the date triggering the limitations period can require fact-intensive analysis, the Trust's pleadings obviate such analysis. The clock must have started at least at the final transfer, in 2009. Maxus's 2016 bankruptcy petition was not a transfer, and is legally irrelevant to any statute of limitations analysis. This ruling was "unprecedented" not

because it was a matter of first impression, but because it was contrary to all existing precedent. The Opinion's ruling therefore misapplies *Tronox* as a matter of law.

### C. Reversal Will Materially Advance the Litigation

16. Next, the Trust misstates the basis of Repsol's Motion. Repsol seeks review of the Opinion's ruling that alter ego constitutes a standalone cause of action, not prior rulings that "the Trust is the proper plaintiff in a collective action seeking to impose alter-ego liability on YPF and Repsol." Opp'n at 18. The Trust intentionally misstates Repsol's basis to appeal because it cannot defend the Opinion's creation of an independent alter ego cause of action; so it addresses a different, uncontested question. Merely because an estate or trust gains standing to pursue alter ego *allegations*, a court cannot create an independent cause of action. *See* Mot. at 10-11 (citing cases finding generalized alter ego claims belonged to estate while also holding that alter ego was not independent cause of action). No "consented-to structure of the Plan" or Bankruptcy Court contrary statements change that.

17. The Trust then contends that interlocutory appeal is inappropriate because, even if successful, the unjust enrichment, civil conspiracy, and "associated 'self-piercing' claim" remain. Opp'n at 18-19. Not so. The unjust enrichment and civil conspiracy counts are tethered to the fraudulent transfer ones. If the decades-old fraudulent transfer claims are time-barred, and not salvaged by the collapsing doctrine, the unjust enrichment and civil conspiracy claims fail too.[3]

---

[3] The Trust argues that the unjust enrichment claims would not be time-barred even if the "*Tronox*-based holding" were reversed because "unusual or extraordinary circumstances [may] warrant deviating from the analogous limitations period." Opp'n at 19 n.14 (quoting *Pulieri v. Boardwalk Props., LLC*, 2015 WL 691449, at *13 (Del. Ch. Feb. 18, 2015)). *Pulieri* supports Repsol. It found no such circumstances required for tolling period because the plaintiff could not "legitimately contend that it was impossible to discover the facts giving rise to its claim because the price of the [] transfer was self-evident." *See Pulieri*, 2015 WL 691449, at *13. Likewise, the facts giving rise to the alleged unjust enrichment were revealed in public filings regarding the transfers and the subject of the well-publicized New Jersey litigation since 2005. Every reasonable Maxus creditor would have known since at least 2007 that OCC (Maxus's most

18. Likewise, the Trust's "self-piercing" reference is inapplicable to these issues. "Self-piercing" relates to whether a claim belongs to the estate: if the alter ego allegations allege a generalized harm applying equally to all creditors ***and*** the debtor could have asserted the claim outside of bankruptcy (*i.e.*, self-pierce) then the claim belongs to the estate. *See* Clarification Op. at 10-11 ("[T]o the extent the other creditors *and the debtor* could pursue **claims based upon the same theory**, the claim in question should be considered general, and, therefore, property of the bankruptcy estate.") (bold emphasis added, italicized emphasis original). The language that the Trust claims permits a standalone alter ego claim actually demonstrates that alter ego is *not an independent claim,* but a *theory of liability* upon which claims are based.

19. Next, again conflating standing and causes of action, the Trust argues that the "alter ego claims" would exist "even if this Court were to find the Debtors (and the Trust as their successor) cannot seek to recover on alter ego claims collectively." Opp'n at 19. Again, Repsol does not seek to prohibit the Trust from proceeding on behalf of all creditors for causes of action *premised on* an alter ego theory. But the law requires an underlying cause of action. If the Trust can prove its fraudulent transfer claims and the liable party lacks sufficient assets—as a result of alter ego conduct—then the Trust could "recover on [its] alter ego claims collectively." There would be an underlying cause of action—fraudulent transfer—and an equitable theory of liability to extend the fraudulent transfer liability beyond the directly liable party, just as the alter ego theory works. Repsol's Motion attacks the baseless concept that the Trust can pursue a roving alter ego claim without asserting a substantive cause of action.

20. The Trust offers a fantasy of each Maxus creditor "litigat[ing] their individual alter-ego based claims against YPF and Repsol in order to recover on their unpaid claims against

significant creditor) alleged that Maxus was insolvent and that Repsol engaged in fraudulent transfers and "alter ego" activity.

the Debtors." Opp'n at 19. Like the Trust, Maxus's individual creditors could never have asserted an independent, standalone "alter ego" cause of action against Repsol outside of bankruptcy.[4] Nor is there any basis for the Trust to do so by aggregating the creditors' individual claims in bankruptcy. Instead, the Trust now owns the "alter ego claims" and can only use them in conjunction with a viable, substantive cause of action that the Trust owns.

21. Lastly, the Trust again ignores why interlocutory appeal is warranted. The Opinion allows non-existent "claims" to continue, preventing meaningful settlement talks. Eliminating legally-flawed claims now—to which the Trust ascribes significant damages— would help terminate the litigation.

## CONCLUSION

For the foregoing reasons, the Court should grant Repsol's Motion.

---

[4] The Trust's threat that "one way or another, [] Repsol [will] have to answer for [its] prepetition alter ego conduct," (Opp'n at 20) is empty. Repsol answered for its alleged prepetition conduct in a decade-long litigation with OCC—Maxus's largest creditor and the driving force behind the Trust—and won.

Dated: April 10, 2019
 Wilmington, Delaware

    */s/ Daniel B. Butz*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
Daniel B. Butz (No. 4227)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

- *and* -

WEIL, GOTSHAL & MANGES LLP
Edward Soto
1395 Brickell Avenue
Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159

Robert Lemons
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Repsol Defendants*